## UNITED STATES v. CUSSON.
### No. 23.

Circuit Court of Appeals, Second Circuit.
Dec. 2, 1942.

George G. Battle and Battle, Levy, Fowler & Newman, all of New York City (Isaac H. Levy, of New York City, of counsel), for appellant.

Keith Brown, of Washington, D. C., and Mathias F. Correa, U. S. Atty., of New York City (Silvio J. Mollo, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, CHASE and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Georgette Cusson appeals from an order sentencing her to imprisonment for refusing under a claim of privilege to answer questions put to her before a grand jury. Two questions arise: (1) whether we have jurisdiction over the appeal; (2) whether the witness could claim her privilege against self-crimination. The first arises because, instead of getting the appeal allowed by a district or circuit judge, the respondent merely served a notice of appeal under Rule III of the rules governing criminal appeals, 18 U.S.C.A. following section 688.

On June 15, 1942, less than thirty days after the order was entered, the district judge signed an order on stipulation of the parties which "settled and allowed" a printed record as "the bill of exceptions herein, and ordered" it "to be filed as part of the transcript of the record herein." Also, within a few days after the order was entered, the respondent, who had been taken into custody, moved for bail in this court which granted it over the opposition of the prosecution. In view of the uncertainty following upon the equal division of the Supreme Court in Nye v. United States, 313 U.S. 33, 44, 61 S.Ct. 810, 85 L.Ed. 1172, we shall assume arguendo that we should have had no jurisdiction over the appeal if the respondent had merely served the notice of appeal, so that the question becomes whether the circumstances we have just mentioned made any difference. In McCrone v. United States, 9 Cir., 100 F.2d 322, the district judge had settled a bill of exceptions and the circuit court of appeals had denied bail—both within the time to

appeal—yet the appeal was dismissed. The decision seems to us on all fours with the case at bar for we cannot distinguish between granting and denying bail, if bail was denied upon the merits. We are not, however, persuaded by the reasoning. The allowance of an appeal—when it does not lie in discretion—involves no judicial decision except that the appellate court will have jurisdiction over the appeal when allowed; and it is the almost universal practise to leave even that to the appellate court itself. In re Kyle, C.C., 185 F. 219. That court is always under a duty to examine its jurisdiction ex mero motu and can never properly undertake to pass upon the merits till it has done so. When we passed upon the application for bail we necessarily assumed that there was an appeal before us, which in fact depended only on whether an appeal had been formerly allowed. We could have allowed it at the time of the application itself, and our omission was at most merely a procedural irregularity. Even though we did not, as probably in fact we did not, literally go through the conscious process of allowing it, the law should supply the absent element which was necessary to the validity of what we did do consciously. Whether the settlement of the bill of exceptions was by the same reasoning also the equivalent of an allowance, it is not necessary to decide. We proceed to the merits.

▆▆ The question which the respondent refused to answer was whether she had met "any of the Groveses" upon a visit to Philadelphia in February, 1941. This question was harmless enough on its face and an answer to it could become incriminating only by reason of some setting which made it a possible step in the disclosure of a crime. The issue on this appeal is whether the record contains enough evidence of such a setting. We think that it does. At the time of her visit, two men named Groves were under indictment in the Southern District of New York; the nature of the charge does not appear. Their trial took place a little while afterwards; she went to Mexico before it began, stayed there while it was on, and came back shortly after its conclusion. Her excuse for refusing to say whether she met and talked with "the Groveses" was that it might serve as a link in establishing that they had told her to go to Mexico so as to avoid being called as a witness upon their trial and that this would tend to prove that she had conspired with them to obstruct justice. § 241, 18 U.S.C.A.

The reality of this danger depended upon the likelihood that she might be subpoenaed as a witness. The record does not show that she had been; she herself denied that she had, and the prosecution did not and does not say that she had. It does appear, however, that in an interview with her before she went before the grand jury, the prosecutor in charge of the matter had asked her whether she had been subpoenaed to attend the trial, from which she had reason to assume that the inquiry before the grand jury was to be directed to her absence at the trial. The fact that she had not been subpoenaed was no protection to a charge that she had agreed to go beyond the jurisdiction where she could not be subpoenaed; and the question put to her by the prosecutor, followed by the effort before the grand jury to learn whether she had talked with the Groveses just before their trial, in our judgment laid a warm enough scent to make its pursuit genuinely perilous to her. As to the law, there is nothing we care to add to what we said in United States v. Zwillman, 2 Cir., 108 F.2d 802, and United States v. Weisman, 2 Cir., 111 F.2d 260. It is obvious that no general principal can be laid down; the question is always whether the danger to be apprehended from an answer is near enough to be real, or whether it is too remote to be substantial.

Order reversed; respondent discharged.