**SPEED et al. v. TRANSAMERICA CORP.**

**FRIEDMAN et al. v. TRANSAMERICA CORP.**

**ZAHN v. TRANSAMERICA CORP.**

Civ. A. Nos. 480, 468, 490.

United States District Court
D. Delaware.

Oct. 18, 1951.

Daniel O. Hastings, Ayres J. Stockly and Thomas R. Hunt (Hastings, Stockly, Walz & Wise), all of Wilmington, Del., Arthur Frank and Claude L. Gonnet (Frank & Gonnet), of New York City, for plaintiffs Speed and others.

Samuel J. Levinson, Frank Weinstein and Robert Bernstein, all of New York City, and Samuel Handloff, of Wilmington, Del., for plaintiffs Friedman and others.

Daniel O. Hastings, Ayres J. Stockly and Thomas R. Hunt (Hastings, Stockly, Walz & Wise), all of Wilmington, Del., Arthur Frank and Claude L. Gonnet (Frank & Gonnet), of New York City, for plaintiffs Zahn.

Hugh M. Morris, Edwin D. Steel, Jr. and William S. Megonigal, Jr. (Morris, Steel, Nichols & Arsht), all of Wilmington, Del., for defendant.

Roger S. Foster, General Counsel, Milton P. Kroll, Asst. General Counsel, and Alexander Cohen, Attorney, all of Washington, D. C., for Securities and Exchange Commission for amici curiæ.

William H. Foulk and Herbert L. Cobin of Wilmington, Del., for interveners.

LEAHY, Chief Judge.

As the terminal date approaches of what has been an unusually lengthy litigation, after trial, argument and opinion and just as a formal decree is about to be entered, defendant petitions the Court for an order to reopen the case to take new evidence—

which defendant says is of decisive importance—to establish defendant had no preconceived intent or plan to capture the increased inventory profit of Axton-Fisher either prior to its offer of November 12, 1942, or prior to April 30, 1943, when the Class A stock was called for redemption.

The witness defendant offers to bring forward is Hillyer Brown, Esq., a California lawyer, who represented Transamerica in the critical years of 1942–43 and until the Spring of 1948. He now says he "can furnish new and vitally important evidence on the crucial issues and that unless said evidence is received the gravest miscarriage of justice will ensue."

1. His offer of proof states that prior to the trial of this litigation he urged Delaware counsel to permit him to testify on what I have described as the vital issue in the case at bar—i. e., did or did not defendant intend to capture the inventory profit of Axton-Fisher. He says he can "conclusively establish that Transamerica was not guilty of the least misrepresentation" and committed no violation of the SEC statutes or of its rules and regulations. The reason given for his failure to testify at the trial is because the Delaware lawyers representing the defendant informed him under the Delaware law it would be improper for him—Brown—as an attorney representing defendant to testify. He now says there is no impropriety in giving the testimony he wants to give. He further says that in April 1948 he resigned from his former firm and became and still is "a full time employee" of Standard Oil Company of California as a vice-president and director of that Company; and since 1948 he has received no compensation "of any kind" for services he formerly received as attorney for defendant Transamerica.

2. Brown avers, circa 1923–48, he was a corporation lawyer; and during that period of time he advised on new securities issues, recap plans and bond indentures for many corporations under state and federal laws. His expert competence as narrated is quite impressive, and I truly believe

Brown. I had the opportunity to observe him on the witness stand after I had, after the trial, once before reopened this case to hear his testimony about Robbins. However, I have no categorical confidence that if I should once again reopen the case his testimony will require me to change the decision I have made in the matter at bar.

3. Brown's affidavit in support of the present petition to reopen goes into a long discussion about frequent and confidential talks between Axton-Fisher and Transamerica—increased value of tobacco inventory—Robbins' trips to California—Andrews' conversations with officials of Philip Morris—Transamerica's offer to buy public-held shares by its letter of November 12, 1942.

4. It is plain the present petition to reopen is not based on newly discovered evidence. That is firmly established by the present record upon which I based my decision. As far as the cardinal issues are concerned, Brown's proffer of testimony is, at best, mostly cumulative. There is nothing to show direct evidence which could establish Transamerica had no intention to liquidate Axton-Fisher. His proffered testimony, in truth, is negative in nature—he had no knowledge, nobody told him about liquidation. After once more re-examining the record, I am convinced Brown can cast no light on the detail of the scheme to capture the lurking profit which Transamerica observed and took.

My conclusion is:

This is not "new" evidence (manifestly not newly discovered evidence) which is of a nature to be "decisive" in order to absolve defendant from a decree which is "one of drastic and far-reaching consequences" as it "may involve not only millions of dollars of liability, but far more important" such a decree may involve "Transamerica's reputation for honesty and moral integrity." The admonition of defense counsel that this Court should satisfy its own conscience under such circumstances has been fully considered. I have no further comment.